UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUNOPTA, INC. and SUNOPTA BIOPROCESS INC., | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) Case No. 4:08CV78 JCH ) |
| ABENGOA BIOENERGY NEW TECHNOLOGIES, INC., f/k/a ABENGOA BIOENERGY R & D, INC., and DAVID WEIDONG HE, | ) ) ) ) ) |
| Defendant(s). | ) ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Abengoa Bioenergy New Technologies, Inc.'s ("Abengoa") Motion to Dismiss and Compel Arbitration, filed February 19, 2008. (Doc. No. 33). The matter is fully briefed and ready for disposition.

## **BACKGROUND**[1]

At all relevant times, Plaintiffs SunOpta, Inc. and SunOpta BioProcess Inc. (collectively "SunOpta") owned and marketed proprietary fiber preparation and fiber pretreatment technology, including unique steam explosion technology, useful in biomass processing applications, including the conversion of lignocellulosic biomasses into cellulosic ethanol. (Amended Complaint ("Complaint" or "Compl."), ¶ 3). Defendant Abengoa, among other things, designs and operates facilities that convert wood, stover, and other biomass materials and feedstock into ethanol, that is then distilled for use in fuel. (Abengoa's Memorandum in Support of its Motion to Dismiss and Compel

---

[1] The majority of the Court's background section is taken from Plaintiffs' Amended Complaint, to which Abengoa has not yet filed an Answer.

Arbitration ("Abengoa's Memo in Support"), P. 2, citing Compl., ¶¶ 4-5). Defendant David Weidong He ("Weidong He") was formerly employed by SunOpta BioProcess Inc. as a Process Development Manager. (Compl., ¶ 6). In connection with his employment with SunOpta, Weidong He signed several agreements under which he promised not to disclose or misappropriate SunOpta's trade secrets and confidential information during his employment or at any time thereafter. (Id., ¶ 70). Weidong He's employment with SunOpta eventually was terminated, allegedly for disclosing confidential information to third parties. (Id., ¶¶ 6, 82-91). According to SunOpta, on or about April 1, 2007, Weidong He joined Abengoa as a Research and Development Engineer, to assist Abengoa with the development of its fiber preparation and pretreatment lines. (Id., ¶ 92).[2]

In or around late 2002, SunOpta and Abengoa entered into negotiations regarding Abengoa's potential use of SunOpta's fiber preparation and pretreatment technology. (Compl., ¶¶ 25, 26). On or about January 8, 2004, the parties entered into an "Engineering and Consulting Services Agreement" ("Consulting Agreement"), pursuant to which SunOpta agreed to provide certain technical information for the fiber preparation and pretreatment system Abengoa needed for its planned Salamanca, Spain cellulosic ethanol facility.[3] (Id., ¶ 30). On or about April 12, 2004, the parties executed a Subcontract Agreement, under which SunOpta agreed to perform certain engineering work relating to a grant Abengoa received from the U.S. Department of Energy ("DOE").[4] (Compl., ¶¶ 7, 34). On or about May 10, 2004, the parties executed a Technology Development Agreement ("TDA"), an integrated agreement relating to the parties' technology rights.

---

[2] SunOpta maintains that in his current position at Abengoa, Weidong He inevitably will disclose and rely on SunOpta's confidential information and trade secrets. (Compl., ¶ 93).

[3] A copy of the Consulting Agreement is attached to SunOpta's Complaint as Confidential Exhibit B.

[4] A copy of the Subcontract Agreement is attached to SunOpta's Complaint as Confidential Exhibit C.

(Id., ¶¶ 7, 44).[5] The parties executed the TDA, in part, to protect SunOpta's rights to its existing and developing intellectual property and trade secrets. (Id., ¶ 45). The Subcontract Agreement and TDA contained substantially similar arbitration provisions, as follows:

> The Parties hereto shall use their best efforts to resolve by mutual agreement any disputes, controversies or differences which may arise from, under, out of or in connection with this Agreement. If the Parties are unable to resolve any such disputes, controversies or differences, the matter shall be finally and conclusively settled by a single arbitrator in a binding arbitration proceeding conducted in St. Louis, Missouri in accordance with the then existing Commercial Arbitration Rules of the American Arbitration Association (or any successor thereof).

(Subcontract Agreement, ¶ 34; TDA, ¶ 11).

In 2005, Abener Energia S.A. ("Abener"), a majority owned subsidiary of Abengoa, executed a contract for the purchase of one of SunOpta's modified fiber preparation systems for Abengoa's bioethanol production plant in Babliafuente (Salamanca), Spain (the "Spanish Contract").[6] (Compl., ¶ 55). In March, 2007, Abener threatened to declare the Spanish Contract in default, alleging SunOpta had not performed various obligations to deliver equipment to Abener in Spain. (Id., ¶ 99). According to SunOpta, Abengoa then attempted to "coerce, extort, and intimidate" SunOpta into revising the TDA, in exchange for Abengoa's acknowledgment that SunOpta was not in default of any of their agreements, including the Spanish Contract. (Id., ¶ 102). SunOpta refused to amend the TDA as requested by Abengoa. (Id., ¶ 103). Since that time, Abener has refused to pay the remaining amounts due SunOpta under the Spanish Contract. (Id., ¶ 107).

On October 15, 2007, Abengoa announced in a press release that it had opened a "state-of-the-art pilot plant" in York, Nebraska (the "York Plant"), dedicated to researching and developing

---

[5] A copy of the TDA is attached to SunOpta's Complaint as Confidential Exhibit D.

[6] A copy of the Spanish Contract is attached to SunOpta's Complaint as Confidential Exhibit E.

biofuel production processes from lignocellulosic biomass. (Compl., ¶ 109). On or about February 28, 2007, Abengoa announced via press release that the, "U.S. Department of Energy (DOE) has awarded Abengoa Bioenergy a financial assistance grant of up to $76 million to design, construct and operate a first of a kind commercial facility to produce ethanol from lignocellulosic biomass." (Id., ¶ 113). The planned location for the plant was Hugoton, Kansas (the "Hugoton Plant"). (Id.). According to SunOpta, Abengoa has not purchased, or contracted to purchase, modified fiber preparation systems from SunOpta for use and/or incorporation in its York or Hugoton Plants, nor has it procured a license, or other form of permission, to use SunOpta's proprietary fiber preparation technology in the plants. (Id., ¶¶ 110, 114). SunOpta maintains Abengoa nevertheless installed a nearly identical fiber preparation system at the York Plant, and further used SunOpta's proprietary fiber preparation and pretreatment system as part of its design submitted to obtain the grant for the Hugoton Plant. (Id., ¶¶ 111, 115).

SunOpta filed its original Complaint against Defendants Abengoa and Weidong He under seal on January 17, 2008. (Doc. No. 1).[7] In its Amended Complaint, filed February 19, 2008, SunOpta asserts the following claims for relief: Misappropriation of Trade Secrets against all Defendants (Count I); Breach of Contract against Abengoa (Count II); Tortious Interference with Contract against Abengoa (Count III); Breach of Contract against Weidong He (Count IV); Civil Conspiracy against all Defendants (Count V); and Tortious Interference with Contract against Abengoa (Count VI). (Compl., ¶¶ 118-166). SunOpta seeks preliminary and permanent injunctive relief, together with an award of compensatory and punitive damages. (Id., PP. 40-42).

---

[7] That same day, SunOpta filed under seal Motions for Preliminary Injunction and for Expedited Discovery and to Preserve Evidence. (Doc. Nos. 7, 9).

As stated above, Abengoa filed the instant Motion to Dismiss and Compel Arbitration on February 19, 2008. (Doc. No. 33). In its motion, Abengoa maintains SunOpta's claims against it must be dismissed, as the parties' agreements require that the disputes be resolved through binding arbitration.[8]

## DISCUSSION

### I. Are Some Or All Of SunOpta's Claims Arbitrable?

Under Eighth Circuit law, "[b]efore a party may be compelled to arbitrate under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." Houlihan v. Offerman & Co, Inc., 31 F.3d 692, 694-95 (8th Cir. 1994) (citation omitted). The Eighth Circuit continued:

> A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement. 9 U.S.C. §§ 3 & 4. An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id. at § 2...[Further], we are mindful that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Houlihan, 31 F.3d at 695; see also Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 679-80 (8th Cir. 2001).

In the present case, the parties do not dispute that they entered into valid arbitration agreements. Thus, the Court need not embark on an analysis of the validity of the agreements; rather, the only issue is whether SunOpta's claims are arbitrable under the terms of those agreements.

---

[8] On March 12, 2008, SunOpta filed a Demand for Arbitration with the American Arbitration Association, seeking compensatory and punitive damages and injunctive relief for breaches of contracts between SunOpta and Abengoa. (See Demand for Arbitration, Doc. No. 54-2, P. 2).

HealthPartners, Inc. v. Health Enhancement Systems, Inc., 2004 U.S. Dist. LEXIS 24763 at *13 (D. Minn. Dec. 8, 2004). Where, as here, the arbitration provisions are broadly drafted[9], "and in the absence of any express provision excluding a particular grievance from arbitration....only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. at *14 (internal quotations and citation omitted). See also Versailles Enterprises, Inc. v. Schlotzsky's, Inc., 2000 U.S. Dist. LEXIS 22372 at *22 (E.D. Mo. Feb. 9, 2000) (internal quotations and citation omitted) ("Arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").[10]

With these standards in mind, the Court turns to a discussion of SunOpta's individual claims for relief against Abengoa.

### A.  **Misappropriation Of Trade Secrets By Abengoa**

In Count I of its Complaint, SunOpta asserts that information regarding its fiber preparation and pretreatment technology constitutes trade secrets, because it derives independent economic value from not being generally known, and was subject to SunOpta's reasonable efforts to maintain its secrecy. (Compl., ¶ 119). SunOpta continues to assert the following with respect to Abengoa:

120. ....[I]n connection with Abengoa's performance under the Subcontract Agreement, TDA and other agreements,....Abengoa [was] given access to

---

[9] The Court interprets the language of the arbitration provisions, requiring the parties to submit all disputes, controversies or differences arising, "from, under, out of or in connection" with the Subcontract Agreement and TDA to binding arbitration, to be equally as broad as "arising out of or relating to." See Simitar Entertainment, Inc. v. Silva Entertainment, Inc., 44 F.Supp.2d 986, 996 (D. Minn. 1999) (citation omitted) ("At most, the omission of 'relating to,' from these arbitration clauses, creates an ambiguity as to the scope of the arbitrability, which must be resolved, absent some other showing, in favor of arbitration.").

[10] The Eighth Circuit has held that, "[u]nder the Federal Arbitration Act, we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims." Hudson v. ConAgra Poultry Co., 484 F.3d 496, 499-500 (8th Cir. 2007) (citation omitted).

> SunOpta's confidential and proprietary information regarding its fiber preparation and pretreatment technology....
>
> 122. Abengoa misappropriated SunOpta's trade secret information by (a) copying the modified fiber preparation system described in the TDA and installing a nearly identical fiber preparation system at the York Plant; (b) copying the modified fiber preparation system in Salamanca, Spain and installing it at the York Plant; (c) copying and incorporating SunOpta's proprietary fiber preparation and pretreatment system into Abengoa's design for the Hugoton Plant and submitting that design in its confidential application to the DOE; and (d) incorporating SunOpta's proprietary technology into the technical design plan and process flow specification for the Hugoton Plant.

(Compl, ¶¶ 120, 122).

Upon consideration of the foregoing, the Court finds Count I of SunOpta's Complaint is covered by the arbitration provisions, as by its own terms it relates to both the Subcontract Agreement and the TDA. Specifically, the Court finds that even if the claim does not raise issues of contract interpretation or performance, which it very well may, it clearly is connected to the contractual relationship between the parties, and the information Abengoa was made privy to as a result of that relationship. See Versailles, 2000 U.S. Dist. LEXIS 22372 at *27-28. The Court will therefore grant Abengoa's Motion to Compel Arbitration with respect to Count I of SunOpta's Complaint, and stay consideration of the claim pending arbitration.[11]

### B. **Breach Of Contract**

In Count II of its Complaint, SunOpta asserts Abengoa breached the Subcontract Agreement, the TDA, and other agreements between the parties by, among other things, using, copying and/or

---

[11] SunOpta concedes a portion of its claim in Count I is subject to arbitration. (See Plaintiffs' Memorandum of Law in Response to Abengoa's Motion to Dismiss and to Compel Arbitration ("SunOpta's Opp."), P. 14 ("[The misappropriation of trade secrets claim] is based [] in part on Abengoa's misuse of confidential information obtained from SunOpta under the TDA."). In a separate Memorandum and Order entered this day and incorporated herein, this Court has compelled arbitration of the portion of Count I asserting wrongdoing on the part of Defendant Weidong He, both individually and in connection with his employment relationship with Abengoa. The Court thus orders Count I stayed in its entirety pending arbitration.

knocking off SunOpta's modified fiber preparation and pretreatment systems. (Compl, ¶¶ 128-136). With these allegations, the Court finds Count II of SunOpta's Complaint necessarily is covered by the arbitration provisions, as by its own terms it relates to both the Subcontract Agreement and the TDA.[12] The Court thus will grant Abengoa's Motion to Compel Arbitration with respect to Count II of SunOpta's Complaint, and stay consideration of the claim pending arbitration.

### C. Tortious Interference With Contract

In Count III of its Complaint, SunOpta alleges in relevant part as follows:

138. At all relevant times herein, Abengoa had knowledge that the Spanish Contract existed and was a valid contract between SunOpta and Abener.

139. In approximately May 2007, Abengoa wrongfully, unlawfully, and intentionally induced Abener to breach the Spanish Contract by (a) causing Abener to wrongfully contest other parts of SunOpta's performance of the Spanish Contract and attempt to put the Spanish Contract in default with SunOpta's surety, and (b) otherwise interfering with Abener's timely performance of its obligations under the Spanish Contract.

(Compl., ¶¶ 138-39). Underlying SunOpta's allegations in Count III is its claim that Abengoa attempted to coerce and intimidate SunOpta into modifying the terms of the TDA, and into conveying certain technology described therein, in exchange for Abengoa's confirmation that SunOpta was not in default of any contracts then pending with either Abener or Abengoa. (Id., ¶¶ 99-108).

Once again, upon consideration of the foregoing, the Court finds Count III of SunOpta's Complaint to be covered by the arbitration provisions, as it clearly arose "out of or in connection with" the TDA. Specifically, the Court finds that even if the claim does not raise issues of contract interpretation or performance, it clearly is connected to the contractual relationship between the parties, and the information Abengoa sought to obtain as a result of that relationship. See Versailles,

---

[12] SunOpta apparently concedes Count II is subject to arbitration. (See SunOpta's Opp., P. 13).

2000 U.S. Dist. LEXIS 22372 at *27-28.[13]  Further, according to SunOpta's own assertions, in the absence of the TDA Abengoa would have been unable to engage in the wrongdoing alleged in Count III.  The Court thus will grant Abengoa's Motion to Compel Arbitration with respect to Count III of SunOpta's Complaint, and stay consideration of the claim pending arbitration.

### D. Civil Conspiracy And Tortious Interference With Contract

In Count V of its Complaint, SunOpta alleges Abengoa and Weidong He conspired to enable Weidong He to breach his contractual obligations to maintain the confidentiality and secrecy of SunOpta's proprietary information, and to misappropriate SunOpta's trade secret information. (Compl., ¶¶ 154-159).  In Count VI of its Complaint, SunOpta alleges that by recruiting and hiring Weidong He, and then expropriating and misappropriating SunOpta's trade secrets and proprietary information, Abengoa intentionally interfered with the confidentiality and non-disclosure agreements between Weidong He and SunOpta.  (Id., ¶¶ 161-166).

Upon consideration, the Court will stay Counts V and VI pending arbitration.  The Court finds it cannot determine whether Abengoa and Weidong He conspired to enable Weidong He to breach his contractual obligations regarding SunOpta's confidential information, or whether Abengoa unlawfully induced Weidong He to breach such obligations, without first undertaking an understanding of both the source(s) of Abengoa's technology on fiber preparation and pretreatment systems, and SunOpta and Abengoa's respective rights and obligations under the TDA and Subcontract Agreement.  As the latter inquiries are now subject to a mandatory stay pending

---

[13] SunOpta effectively acknowledges the connection between the TDA and its claim in Count III, as follows:  "SunOpta had a valid business contract with Abener of which Abengoa had knowledge.  Abengoa unlawfully induced Abener to breach its contract with SunOpta, without justification, by tying Abener's performance of the Spanish Contract to the TDA and by inducing Abener to wrongfully declare the Spanish Contract in default after SunOpta refused to modify or restate the TDA."  (Compl., ¶ 105).

arbitration, the Court will exercise its "inherent power to grant a stay [of Counts V and VI] in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." Webb v. R. Rowland & Co., Inc., 800 F.2d 803, 808 (8th Cir. 1986) (citations omitted).[14]

## II. Is SunOpta's Request For Injunctive Relief Subject To Arbitration?

In its motion, Abengoa asserts SunOpta's request for preliminary injunctive relief is subject to arbitration as well. (Abengoa's Memo in Support, PP. 8-12). Normally, "the grant of preliminary relief is within the district court's discretion." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286, 1291 (8th Cir. 1984) (citations omitted). Under Eighth Circuit law, however, "[i]n a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is 'qualifying contractual language' which permits it." Manion v. Nagin, 255 F.3d 535, 538-39 (8th Cir. 2001), quoting Merrill Lynch, 726 F.2d at 1292. "Qualifying contractual language is 'language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute.'" Id. at 539, quoting Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46, 47 n. 3 (8th Cir. 1994).

Careful consideration of the Subcontract Agreement and TDA leads to the conclusion that they do not contain "clear grounds to grant [the requested] relief without addressing the merits of the underlying arbitrable dispute." Peabody, 36 F.3d at 47 n. 3. Rather, the Court finds both agreements provide only that a party shall be entitled to an injunction or specific performance, "for any actual or threatened violation or breach of this Agreement..." (See Subcontract Agreement, ¶ 11(e); TDA, ¶ 8(e)). In order to determine whether an actual or threatened breach has occurred, however, this Court necessarily would have to entangle itself in the merits of the underlying dispute, issues which,

---

[14] Count V is stayed as to both Abengoa and Weidong He.

as explained above, are properly left to the arbitrator. See Merrill Lynch, 726 F.2d at 1292 (citations omitted) ("Here, the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator."). The Court thus will deny SunOpta's Motion for Preliminary Injunction as it relates to Defendant Abengoa.[15]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Abengoa's Motion to Compel Arbitration (Doc. No. 33) is **GRANTED** with respect to Counts I, II, and III of SunOpta's Amended Complaint.

**IT IS FURTHER ORDERED** that Abengoa's Motion to Dismiss (Doc. No. 33) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that all SunOpta's claims against Abengoa are **STAYED** pending completion of the arbitration process.

**IT IS FURTHER ORDERED** that SunOpta's Motion for Preliminary Injunction (Doc. No. 7) is **DENIED** without prejudice with respect to Abengoa.

**IT IS FURTHER ORDERED** that SunOpta's Motion for Expedited Discovery and to Preserve Evidence (Doc. No. 9) is **DENIED** without prejudice with respect to Abengoa.

---

[15] The Court doubts it would have the authority to enforce a preliminary injunction, should it agree to enter one. In other words, a ruling on whether Abengoa violated the terms of a preliminary injunction necessarily would involve a prohibited review of the parties' rights and obligations under the Subcontract Agreement and/or TDA.

**IT IS FURTHER ORDERED** that this matter is set for a telephonic status conference on **Monday, September 29, 2008**, at **10:00 a.m.** SunOpta is to initiate the phonecall. Chambers' telephone number is (314) 244-7600.

Dated this 20th day of March, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE